UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUUL LABS, INC., <br>     a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> BREWSTER SNACK SHOP INC. <br>     a New York corporation, <br><br> Defendant. | Civil Action No.: <br><br> **COMPLAINT** |

**PLAINTIFF'S COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECEPTIVE ACTS AND PRACTICES**

Plaintiff JUUL Labs, Inc. ("JLI"), by and through its undersigned attorneys, files this Complaint against defendant Brewster Snack Shop Inc., a New York corporation ("Defendant"), as follows:

**NATURE OF THE ACTION**

1.  This action arises out of Defendant's unlawful use of JLI's federally registered trademarks including the JUUL® trademark, which provides the basis for JLI's claim for trademark infringement under section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)) and related claims of unfair competition and deceptive trade practice arising under the laws of the State of New York.

2.  JLI is the designer, manufacturer, and distributor of JUUL-branded electronic nicotine delivery systems ("ENDS") and other related products (collectively, "the JUUL Products").

3. The JUUL Products have become targets for individuals and entities that, like Defendant, sell and distribute unauthorized and non-genuine JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States. These diverted products materially differ from genuine JUUL Products eligible for sale in the United States and are thus counterfeit and unlawful.

4. Through this action, JLI combats the sale and distribution of these unlawful products.

## PARTIES

5. JLI is a corporation organized and existing under the laws of the State of Delaware.

6. Defendant Brewster Snack Shop Inc. is a corporation organized and existing under the laws of the State of New York and having its principal place of business at 978 Route 22, Brewster, New York 10509. Defendant owns and operates the Mobil gas station at that location.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b) because (i) claims herein arise out of federal trademark law as codified in 15 U.S.C. § 1114 (*i.e.*, trademark infringement); and (ii) the unfair business practices claim herein is brought with and is related to the substantial claims based on trademark laws. This Court also has supplemental jurisdiction over JLI's claims arising under common law or state law pursuant to 28 U.S.C. § 1367(a) because the claims are so related to JLI's federal law claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.      This Court has general personal jurisdiction over Defendant due to its residence and business activities in this judicial district.  This Court has specific personal jurisdiction over Defendant due to the nature and quality of its actions toward the state in which this Court is located.  The claims asserted herein arise out of and relate to such actions and this Court's exercise of specific personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

9.      Venue in this judicial district is proper for these claims pursuant to 28 U.S.C. § 1391(b).  As described herein, Defendant resides in this judicial district, a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and Defendant has extensive contacts with this judicial district relating to JLI's claims.  Defendant conducts regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of JLI.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

<u>JUUL Trademarks and Products</u>

10.     JLI is the exclusive owner of federally-registered, registration-pending, and common law trademarks.  For example, JLI owns the following United States Trademark Registrations:

| Depiction of Trademark | Registration No. and Date | (1) First Use<br>(2) In Commerce |
|---|---|---|
| JUUL® | 4,818,664<br>(09-22-2015) | (1) 06-01-2015<br>(2) 06-01-2015 |
| JUUL® | 4,898,257<br>(02-09-2016) | (1) 06-01-2015<br>(2) 06-01-2015 |
| JUULpods® | 5,918,490<br>(11-26-2019) | (1) 06-30-2015<br>(2) 06-30-2015 |

11.     True and correct copies of the Registration Certificates for the above-listed trademarks are attached hereto as Exhibit A.  Hereinafter, JLI may sometimes utilize the phrase

"the JUUL Marks" to refer to, collectively, JLI's federally-registered, registration-pending, and common law trademarks.

12. JLI designs, manufactures, distributes, markets, and sells JUUL Products, including the JUUL system comprised of: (i) a device containing a rechargeable battery, control circuitry and a receptacle for a cartridge or pod, (ii) a disposable cartridge or pod ("JUULpod") that can be inserted into the device, has a heating chamber and is prefilled with a proprietary nicotine e-liquid formulation, and (iii) a charger for charging the device, and related accessories.

13. The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing materials related to such products.

14. The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned.

15. JLI continues to preserve and maintain its rights with respect to the JUUL Marks, including those registered with the United States Patent and Trademark Office.

16. Due in large part to the substantial commercial success of the JUUL Products, the JUUL brand is well-known to consumers and has garnered extensive coverage by the media.

17. Through the extensive use of the JUUL Marks, JLI has spent substantial time, money, and effort in developing consumer recognition and awareness of its brand. JLI markets JUUL Products nationwide to current adult smokers, including through its website, and sells its products through its nationwide authorized network. JLI also markets and sells its products internationally. JLI has built up and developed significant customer goodwill in its entire product line and the JUUL Products are immediately identified by the JUUL Marks.

### Prior Sales of Infringing Goods by Entities Commonly Owned with Defendant and Prior Cease-and-Desist Notices to Such Entities

18.     Prior to the initial purchase from Defendant's business detailed below, representatives of JLI made purchases of counterfeit and diverted grey market products that infringe upon the JUUL Marks from retail businesses operated by entities that, on information and belief, are commonly owned with Defendant (the "Commonly-Owned Entities"), *i.e.*, the individual owners of the Commonly-Owned Entities are the same as the individual owners of Defendant. These prior purchases occurred at retail businesses located in the following cities: Fishkill, New York; Rocky Hill, Connecticut; Avon, Connecticut; Cortlandt Manor, New York; Kingston, New York; Poughkeepsie, New York; Montvale, New Jersey; Newburgh, New York; Saugerties, New York; New Paltz, New York; Brewster, New York; and Hyde Park, New York.

19.     Prior to the initial purchase from Defendant's business detailed below, the New Hampshire Liquor Commission, Division of Enforcement seized diverted grey market products that infringe upon the JUUL Marks from retail businesses located in Seabrook, New Hampshire, Exeter, New Hampshire, and Milford, New Hampshire that, on information and belief, are owned by a Commonly-Owned Entity.

20.     Prior to the initial purchase from Defendant's business detailed below, JLI's counsel mailed cease-and-desist correspondence to each of the Commonly-Owned Entities referenced above. The cease-and-desist correspondence provided specific notice of the following, among other items: (i) JLI's confirmation that goods sold by the Commonly-Owned Entities are in fact counterfeit and non-genuine grey market goods; (ii) JLI's demand that the Commonly-Owned Entities cease the sale, manufacture, marketing, and importation of counterfeit and non-genuine grey market goods, and cease all other unauthorized use of JLI's intellectual property; (iii) JLI's ownership of the JUUL Marks; (iv) the statutory prohibition of

the sale of counterfeit and non-genuine grey market goods and all other unauthorized use of JLI's intellectual property, and JLI's right to seek monetary judgments against infringers; and (v) willful infringement under federal law would be established by any further sales of counterfeit and non-genuine grey market goods or any other unauthorized use of JLI's intellectual property.

<u>Defendant's Sales of Unlawful Grey Market Goods</u>

21.     Beginning on a date that is currently unknown to JLI, Defendant, without the consent of JLI and within the United States, has offered to sell and sold non-genuine JUUL Products which, as stated on the packaging of the products themselves, are only authorized for sale in particular countries outside the United States and materially differ from genuine JUUL Products in the United States ("Unlawful Grey Market Goods").  Because the Unlawful Grey Market Goods are labeled and packaged to comply with the regulations of the authorized foreign marketplaces, the labeling and packaging of the Unlawful Grey Market Goods are not in compliance with the regulations of the U.S. Food and Drug Administration as well as other federal, state, and local regulations.  Further, to the extent the packaging of the Unlawful Grey Market Goods provide required product information and warnings in languages other than English, consumers in the United States who do not read such foreign languages do not receive such required information and warnings.

22.     On April 4, 2022, a representative of JLI made an in-person purchase of an Unlawful Grey Market Good for sale at the Mobil gas station owned and operated by Defendant located at 978 Route 22, Brewster, New York 10509.  A true and correct image of the product purchased on April 4, 2022 is attached hereto as Exhibit B.  JLI subsequently inspected the product purchased on April 4, 2022 and confirmed that the purchased product is in fact a

diverted grey market product that materially differs from genuine JUUL Products sold in the United States.

Ramifications of Sales of Unlawful Grey Market Goods

23. The Unlawful Grey Market Goods sold by Defendant have materially-different packaging than authorized and genuine JUUL Products, including packaging utilizing languages other than English, such as Ukrainian. In particular, the packaging for the Unlawful Grey Market Goods sold by Defendant intended for the Ukrainian marketplace utilize only the Ukrainian language to provide information and warnings concerning the products. Such differences in packaging cause confusion among consumers. In addition, consumers who purchased such Unlawful Grey Market Goods from Defendant who do not read Ukrainian did not receive any such product information or warnings.

24. Defendant distributed and sold Unlawful Grey Market Goods at premium prices higher than the prices it sold authorized and genuine JUUL Products and in a surreptitious manner indicating Defendant knew the unauthorized and non-genuine nature of the Unlawful Grey Market Goods.

25. In order to cover up its sales of Unlawful Grey Market Goods, Defendant misidentified and miscoded the Unlawful Grey Market Goods on receipts to its customers by not referring to the particular types of JUUL Products sold.

26. Defendant's unauthorized use of the JUUL Marks occurred after JLI legally established the existence and significant value of such trademarks, including after JLI's adoption and use of the JUUL Marks and after JLI obtained the trademark registrations described above.

27. Defendant's infusion of the Unlawful Grey Market Goods into the marketplace reflects adversely on JLI, damages the goodwill of the JUUL brand, and thwarts JLI's honest

efforts and considerable expenditures to promote its genuine JUUL Products using the JUUL Marks.

28. Defendant's Unlawful Grey Market Goods are considered counterfeit in nature under the Lanham Act. Defendant's Unlawful Grey Market Goods have materially-different packaging and are not authorized for sale under federal, state, and local regulations. JLI manufactured and packaged the Unlawful Grey Market Goods for sale to consumers residing outside the United States in accordance with foreign regulations. Therefore, Defendant's Unlawful Grey Market Goods are non-genuine and materially different products in the United States that cause consumer confusion and constitute counterfeit trademark infringement when sold in such illegal and unauthorized manner.

**FIRST CLAIM FOR RELIEF**
**Trademark Infringement (15 U.S.C. § 1114)**

29. JLI re-alleges and incorporates by this reference each and every allegation in the paragraphs above as though set forth fully herein.

30. The JUUL Marks, as well as the goodwill arising from such trademarks, have never been abandoned. The JUUL Marks appear clearly on JUUL Products, as well as the packaging and marketing related to such products. JLI continues to preserve and maintain its rights with respect to the JUUL Marks.

31. Defendant's intentional and/or willful actions to sell and distribute counterfeit products such as the Unlawful Grey Market Goods in the United States are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that the Unlawful Grey Market Goods are genuine or authorized JUUL Products.

32. The Unlawful Grey Market Goods are non-genuine JUUL Products in the United States and the "first sale" doctrine does not foreclose Defendant's liability under this cause of action because the Unlawful Grey Market Goods materially differ from genuine JUUL Products authorized for sale in the United States. Specifically, among other things, the labeling and packaging of the Unlawful Grey Market Goods (i) state the products are only authorized for sale in particular countries outside the United States, (ii) are designed to comply with the regulations of the authorized foreign marketplaces, (iii) are not in compliance with the regulations of the U.S. Food and Drug Administration as well as other federal, state, and local regulations, and (iv) provide required product information and warnings in languages other than English, confusing consumers and rendering ineffective such disclosures to consumers who do not read such foreign languages.

33. The foregoing acts of Defendant constitute direct, contributory, and/or vicarious trademark infringement in violation of 15 U.S.C. § 1114.

34. JLI has been damaged as a result of Defendant's infringement of the JUUL Marks. JLI alleges, on information and belief, that Defendant's sale and distribution of the Unlawful Grey Market Goods have resulted in economic loss to JLI and have injured the general reputation of JLI, all to JLI's damage in an amount not yet ascertainable, but will be determined during this action.

35. JLI alleges, on information and belief, that Defendant has derived, received, and will continue to derive and receive from the aforesaid acts of infringement, gains, profits, and advantages in an amount not yet ascertainable, but will be determined during this action.

36. On information and belief, Defendant acted intentionally and/or willfully in infringing upon the JUUL Marks through sale and distribution of the Unlawful Grey Market

Goods, knowing that the JUUL Marks belonged to JLI, that the Unlawful Grey Market Goods were in fact infringing, and that Defendant was not authorized to infringe upon the JUUL Marks through sale and distribution of the Unlawful Grey Market Goods.

37. Defendant's spurious designation of its products as authorized and genuine also constitutes the knowing use by Defendant of at least one "counterfeit mark" as defined in 15 U.S.C. § 1116(d)(1)(B). Therefore, JLI is entitled to recovery of treble damages and to an award of reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

38. Because Defendant's actions also constitute the use by Defendant of at least one "counterfeit mark" as defined in 15 U.S.C. § 1116(d)(1)(B), JLI reserves the right to elect, at any time before final judgment is entered in this case, an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(1) or (2). JLI alleges, on information and belief, that Defendant has knowingly and willfully engaged in the acts complained of with oppression, fraud, malice, and in conscious disregard of the rights of JLI. JLI is, therefore, entitled to the maximum statutory damages allowable.

39. The acts of direct, contributory, and/or vicarious trademark infringement committed by Defendant have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. On information and belief, Defendant's actions were committed in bad faith and with the intent to cause confusion and mistake, and to deceive the consuming public into believing that the Unlawful Grey Market Goods are genuine or authorized JUUL Products.

**SECOND CLAIM FOR RELIEF**
**Trademark Infringement Under Common Law**

40. JLI re-alleges and incorporates by this reference each and every allegation in the paragraphs above as though set forth fully herein.

41. By the acts described above, Defendant has engaged in trademark infringement in violation of the common law of the State of New York.

42. JLI has been damaged by Defendant's acts of trademark infringement.

43. The acts of trademark infringement committed by Defendant have caused, and will continue to cause, JLI irreparable harm unless they are enjoined by this Court. JLI has no adequate remedy at law and is thus damaged in an amount not yet determined.

### THIRD CLAIM FOR RELIEF
### Common Law Unfair Competition

44. JLI re-alleges and incorporates by this reference each and every allegation in the paragraphs above as though set forth fully herein.

45. Defendant's actions described herein constitute unfair competition in violation of the common law of the State of New York.

46. JLI has been damaged by Defendant's acts of common law unfair competition.

47. Defendant's actions described herein have caused, and will continue to cause, JLI to suffer irreparable harm unless enjoined by this Court. JLI has no adequate remedy at law and is thus damaged in an amount not yet determined.

### FOURTH CLAIM FOR RELIEF
### Deceptive Acts and Practices Under Section 349 of New York General Business Law

48. JLI re-alleges and incorporates by this reference each and every allegation in the paragraphs above as though set forth fully herein.

49. Defendant's distribution, marketing, promotion, offering for sale, and sale of unauthorized Unlawful Grey Market Goods, as alleged above, are materially misleading and deceptive to the consumers in New York.

50. Defendant has engaged in consumer-oriented conduct that has affected the general public interest of New York and has resulted in injury, and is likely to result in further injury, to consumers in New York.

51. By the acts described above, Defendant has willfully engaged in deceptive acts or practices in the conduct of business and furnishing of goods in violation of Section 349 of the New York General Business Law.

52. JLI has been damaged by Defendant's deceptive acts or practices.

53. Defendant's actions described herein have caused, and will continue to cause, JLI to suffer irreparable harm unless enjoined by this Court. JLI has no adequate remedy at law and is thus damaged in an amount not yet determined.

## REQUEST FOR RELIEF

WHEREFORE, JLI hereby respectfully requests the following relief against Defendant Brewster Snack Shop Inc., a New York corporation, as follows:

1. An award of Defendant's profits and JLI's damages for trademark infringement under 15 U.S.C §§ 1114 and 1117, trebled, in an amount to be proven at trial;

2. In the alternative to Defendant's profits and JLI's damages for trademark infringement, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) of $2,000,000.00 for each of the counterfeited trademarks willfully utilized by Defendant per type of goods sold, offered for sale, or distributed;

3. An injunction by this Court prohibiting Defendant, and its respective agents, servants, employees, and representatives and all persons in active concert and participation with them, during the pendency of this action and permanently thereafter, from: engaging or continuing to engage in the infringing, unlawful,

      unfair, or fraudulent business acts or practices described herein, including the marketing, sale, distribution, and/or other dealing in any non-genuine JUUL Products such as fake counterfeit products or unauthorized grey-market products; using without permission any mark or other intellectual property right of JLI; acting to infringe the JUUL Marks; falsely designating the origin of any product to be from JLI; engaging in unfair competition with JLI; or acting in any other manner to derogate JLI's intellectual property rights;

4. An Order requiring that Defendant provide complete accountings and for equitable relief, including that Defendant disgorge and return or pay JLI its ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution;

5. An Order that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to JLI;

6. Pursuant to 15 U.S.C. § 1116, including upon ex parte application, an Order for the seizure of goods and counterfeit marks and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in trademark violations;

7. Pursuant to 15 U.S.C. § 1118, an Order requiring that Defendant and all others acting under Defendant's authority, at their cost, be required to deliver up to JLI for destruction all products, accessories, labels, signs, prints, packages, wrappers, marketing materials, and other material in their possession, custody, or control bearing any of the JUUL Marks;

8. Treble damages and punitive damages;

9. JLI's reasonable attorneys' fees;

10. All costs of suit;

11. Prejudgment interest and post-judgment interest in the maximum amount allowed under the law; and

12. Such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

Dated: May 4, 2022

By: */s/ R. Terry Parker*
R. Terry Parker
NY Bar No. 4704748
RATH, YOUNG and PIGNATELLI, P.C.
120 Water Street, Second Floor
Boston, MA 02109
Tel : 603-410-4338
Email: rtp@rathlaw.com

-and-

Randall J. Clement, Esq.
*Pro hac vice admission to be sought*
California State Bar No. 193443
randy@clementandholaw.com
CLEMENT AND HO, APLC
201 W. Whiting Avenue
Fullerton, California  92832
Telephone: (714) 882-5794
Facsimile:  (714) 882-5795

*Counsel for Plaintiff JUUL Labs, Inc.*